UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

DAVID WAYNE CHRISTINE and JOLEEN ANN CHRISTINE,

Debtors.

_____/

Case No. DK 08-03766
Chapter 11
Hon. Scott W. Dales

## MEMORANDUM OF DECISION

### I. Introduction

LDL I, LLC ("LDL"), the holder of a second lien on chapter 11 debtors David and Joleen Christine's residence (the "Residence"), filed a motion for relief from stay on March 18, 2009 (DN 91, the "Motion"). The Residence, commonly known as 1604 Walker, in Fennville, Michigan, also secures a first mortgage in favor of Fifth Third Mortgage Company (the "Fifth Third Mortgage"). The Debtors are marketing the Residence, which sits on a bluff overlooking Lake Michigan, through a court-approved realtor who listed the property for $1.4 million. LDL believes the Residence is worth substantially less than the listing price.

### II. Jurisdiction

The court has jurisdiction of the chapter 11 case of David and Joleen Christine (the "Debtors") under 28 U.S.C. § 1334, and the Motion is a contested matter within the court's core jurisdiction. 28 U.S.C. § 157(b)(2)(G). The court, therefore, may enter a

final order resolving the Motion.  This Memorandum of Decision constitutes the court's findings of fact and conclusions of law. See Fed. R. Civ. P. 52; Fed. R. Bankr. P. 7052.

### III. Analysis

In support of its Motion, LDL alleged that the Debtors owe $523,626.29, and that the Residence is worth $703,000.00 or less.  Taking into account the Fifth Third Mortgage, LDL ultimately alleges absence of equity, evidently invoking 11 U.S.C. § 362(d)(2).  The Motion also alleges that the Debtors have not made any periodic payments to LDL since they filed their bankruptcy petition on April 29, 2008, thereby suggesting lack of adequate protection and cause to lift the automatic stay under 11 U.S.C. § 362(d)(1).

Under 11 U.S.C. § 362(g), LDL bears the burden of proof on the issue of the Debtors' equity; the Debtors bear the burden of proof on all other issues.  To establish equity, the court considers the value of the subject property, and the amount of all liens encumbering it.  Stephens Industries, Inc. v. McClung, 789 F.2d 386, 392 (6th Cir. 1986) ("Equity . . . is the value, above all secured claims against the property, that can be realized from the sale of the property for the benefit of the unsecured creditors"); In re Plastech Engineered Products, Inc., 382 B.R. 90 (Bankr. E.D. Mich. 2008); In re Franke, 268 B.R. 133 (Bankr. W.D. Mich. 2001); Matter of Embrace Systems Corp., 178 B.R. 112 (Bankr. W.D. Mich. 1995).

On two separate days,[1] the court conducted a final hearing at which it heard testimony from LDL's appraiser, Calvin VanNoord, LDL's managing member, Leonard

---

[1] The parties appeared in Kalamazoo, Michigan, on April 20, 2009 and May 14, 2009.

2

Schiller, and David Christine.  The court qualified Mr. VanNoord as an expert under Fed. R. Evid. 702.

On the first day of the final hearing, Mr. VanNoord opined that, as of August 26, 2008, the Residence was worth $825,000.00.  In support of this testimony, LDL introduced photographs of the subject property, and photographs of various comparable properties.  Mr. VanNoord explained that the Debtors' property is located on a bluff overlooking Lake Michigan, and that, in his experience, buyers value Lake Michigan properties more for the land, and less for the improvements.  In his practice, when he values Lake Michigan properties, he gives particular weight to three features -- the height of the bluff, the depth of the lot, and the quality of the beach.  He considered three properties in the vicinity of the Residence which he regarded as comparable, but obviously not identical.  One comparable property was slightly narrower than the subject, one lot was slightly longer, and one had more frontage but was not as deep. He relied on the market comparable or sale approach to valuation, rather than the cost approach, explaining credibly that the cost approach was not reliable given the age of the structure and, as noted before, the greater importance that the market attaches to the land in matters involving Lake Michigan real estate.  The court credits this testimony.

Because Mr. VanNoord's initial appraisal dated back to August, 2008, LDL's counsel inquired about the present market for waterfront properties in West Michigan. Mr. VanNoord testified that typical buyers for such properties have experienced dramatic decreases in their net worth, from which the court infers that the market for such properties has suffered.  To be more precise, based on his observations of the

3

lakeshore market, including by way of illustration a property in Grand Haven, the appraiser opined that he would have to adjust his August 2008 opinion downward by between 20-30%, which means he would discount his original estimate of $825,000.00 by between $165,000.00 to $247,500.00. The court also credits this testimony, as it is premised on the appraiser's experience in the marketplace.

On cross-examination, the Debtors attempted to discredit Mr. VanNoord's reliance on the comparables by referencing differences involving, *inter alia*, sea walls, beach stairways, square footage, and lot sizes, among other differences in the properties. The appraiser offered plausible explanations on cross-examination, persuading the court that he had considered and rejected the differences, or that the differences would not have affected his opinion given his earlier stated premise that in lakefront real estate, the dirt makes all the difference, and improvements are less important. Specifically with respect to sea walls, he explained that in his experience, he attaches very little value to them because "they don't work." Regarding one of the comparables that lacked a beach stairway, he opined that the cost of installation was relatively modest when compared to the value of lake bluff properties.

The Debtors' appraiser was not available to testify, reportedly because of child care issues resulting from the appraiser's mother's "recent" death. The Debtors' counsel advised the court of this on the afternoon of the second day of the hearing. The court refused to adjourn the hearing over LDL's objection because of the court's concern about prejudice to LDL (who was prepared to proceed with a witness from out of state) and because the circumstances surrounding the unavailability of the Debtors' appraiser were sketchy, undocumented, and insufficiently persuasive. Instead, the

4

Case:08-03766-swd   Doc #:110   Filed: 05/26/2009   Page 5 of 7

court permitted Mr. Christine, as the owner of the Residence, to give his opinion of value. See Fed. R. Evid. 702, Advisory Committee Notes to 1972 Proposed Rules ("Thus, within the scope of the rule are not only experts in the strictest sense of the word, e.g., physicians, physicists, and architects, but also the large group sometimes called "skilled" witnesses, such as bankers or landowners testifying to land values."). As a leading commentator on evidence in bankruptcy has noted, however, courts permit landowners to testify as to value, but tend to give such opinions very little weight. Barry Russell, Bankruptcy Evidence Manual § 701:2 (2008-09 ed.)

Mr. Christine opined that the Debtors' residence is worth approximately $1.1 million, and is listed for sale at $1.4 million. He based his opinion on discussions with his real estate agent, his own experience in the market, and by looking in the windows and otherwise informally inspecting a property a mile up the road that is listed for $1.4 million. He said this other property has a smaller lot, less beach frontage, and one less bedroom than his Residence.

The court has considered Mr. Christine's testimony, and Mr. VanNoord's, and finds Mr. VanNoord's expert opinion more credible than Mr. Christine's. Based upon Mr. VanNoord's August 2008 appraisal and other documentary evidence (including photographs), and assuming a downward adjustment to account for a declining market with adverse effects on potential buyers, the court finds the current value of the Residence is not more than $825,000.00, but probably closer to $660,000.00 given the declining market. The court understands the property is presently listed for substantially more than that figure, but without an explanation from the Debtors' real estate agent or appraiser, the court is constrained by the record adduced at the final hearing.

Determining property value is only one part of the equity equation: the court must also consider the extent of liens against the Residence. In this respect, the parties helpfully stipulated that the amount of the Fifth Third Mortgage is $305,043.60.

For its part, LDL's manager, Mr. Schiller, testified that the Debtors owe LDL $524,606.50. On cross-examination, Debtors' counsel offered a letter evidently sent by Mr. Schiller when the parties were attempting to refinance the debt, suggesting a lower principal balance *at that time*, but Mr. Schiller credibly maintained that, with accrued interest and other charges reflected on Exhibit 2, the Debtors owe LDL not less than $524,606.50.[2]

Having found that the Residence is worth not more than $825,000.00 (and probably less than that), and that the Debtors owe LDL at least $524,606.50, and accepting the Fifth Third Mortgage Company debt in the stipulated amount of $305,043.60, the court finds that LDL has met its burden of proving absence of equity.

Debtors offered no persuasive evidence that their Residence is necessary to an effective reorganization that is "in prospect." See United Savings Ass'n of Texas v. Timbers of Inwood Forest, 484 U.S. 365,376 (1988). The case has been pending for over one year, and still the Debtors have no plan or disclosure statement on file. See In re Holly's, Inc., 140 B.R. 643, 700 (Bankr. W.D. Mich. 1992) ("[S]ecured creditors should not bear inordinate delay if the debtor is not progressing to a plan confirmation"). The court finds that the Debtors have failed to meet their burden of proving the Residence is necessary to an effective reorganization in prospect, within the meaning of the statute

---

[2] Debtors also attempted to introduce a supposed foreclosure notice reflecting a lower debt amount, but the court sustained LDL's objection to admission for want of authentication. Fed. R. Evid. 901.

6

as interpreted by the Supreme Court, and therefore the court will lift the automatic stay

under 11 U.S.C. § 362(d)(2).[3]

The court will enter a separate order lifting the automatic stay.

Date: May 26, 2009

Scott W. Dales
United States Bankruptcy Judge

---

[3] At the last day of the hearing, LDL amplified the "for cause" aspect of its Motion, principally attempting to piggy-back on arguments that Fifth Third Mortgage Company advanced in court earlier in the day. In a nutshell, LDL argued that if Fifth Third Mortgage Company gets stay relief, LDL would need stay relief to protect itself from the senior lender's foreclosure. Debtors' counsel sensibly responded that LDL could protect itself by buying out the senior's position or bidding at the foreclosure sale, without stay relief. In any event, because the court finds that relief from stay is warranted under 11 U.S.C. § 362(d)(2), it does not reach the "cause" issue under 11 U.S.C. § 362(d)(1).